2023 IL App (2d) 220411-U
No. 2-22-0411
Order filed August 21, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| FANGZHOU DAI and YINGYI XU, | ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs and Counterdefendants-Appellants, | ) ) ) | |
| v. | ) ) | No. 21-L-578 |
| MINCHELLA & ASSOCIATES, LTD.; ROBERT SCHROEDER and MARIE SCHROEDER; and CHICAGO TITLE INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants | ) ) | Honorable |
| (Robert Schroeder and Marie Schroeder, Defendants and Counterplaintiffs-Appellees). | ) ) | Daniel L. Jasica, Judge. Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Kennedy concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court properly granted defendants summary judgment on their counterclaim that they took by adverse possession the portion of their driveway that encroached on plaintiffs' property. Contrary to plaintiffs' arguments, defendants established as a matter of law that their use of the driveway was (1) adverse, although defendants and their predecessors in title might have been unaware that the driveway encroached on plaintiffs' property; (2) open and notorious, because the driveway and defendants' use of it were obvious to plaintiffs; and (3) exclusive,

because there was no evidence that plaintiffs used, or even had a use for, defendants' driveway.

¶ 2 Plaintiffs, Fangzhou Dai and Yingyi Xu, own residential property in Kildeer. Defendants Robert and Marie Schroeder own residential property immediately north of plaintiffs' property. Plaintiffs filed an action for ejectment against the Schroeders, alleging that part of their driveway illegally encroached on plaintiffs' property. Plaintiffs also alleged (1) negligence against Minchella & Associates, Ltd., a law firm representing plaintiffs on the purchase of the property, and (2) breach of contract against Chicago Title Insurance Company, which had issued a title insurance policy in connection with the purchase. Plaintiff sought relief from these defendants for the alleged encroachment.

¶ 3 The Schroeders pleaded affirmative defenses and a counterclaim, all of which alleged that the Schroeders owned the encroaching portion of the driveway by adverse possession. On cross-motions for summary judgment (735 ILCS 5/2-1005(c) (West 2020)), the trial court held for the Schroeders and awarded them title to the encroaching portion. Plaintiffs have filed an interlocutory appeal (see Ill. S. Ct R. 304(a) (eff. Mar. 8, 2016)), contending that they are entitled to summary judgment because the Schroeders failed to prove all elements of adverse possession. We affirm.

¶ 4                                  I. BACKGROUND

¶ 5 On September 8, 2020, plaintiffs filed a three-count complaint. Only count I, against the Schroeders, is pertinent here. That count alleged that plaintiffs' property (south property), to which they held title since September 4, 2018, was bordered on the north by the Schroeders's property (north property). A driveway was developed on the north property, consisting in part of a circular drive at the front of the residence. The southern curve of the circular drive occupied part of the south property at its northern edge (hereinafter, we refer to the encroaching portion of the driveway

as the driveway extension). Plaintiffs prayed for an order of ejectment (see 735 ILCS 5/6-129 (West 2020)) as to the encroachment.

¶ 6    The Schroeders, who acquired the north property in 2008,[1] filed an answer, affirmative defenses, and a counterclaim. The affirmative defenses and the counterclaim all asserted that the Schroeders owned the driveway extension by adverse possession (see *id.* § 13-101). The Schroeders alleged that (1) for 20 years or more before plaintiffs filed their action, the north property's driveway, including the extension, had been used exclusively for the benefit of the north property owners; (2) this prior use of the driveway had been open, as the driveway and the extension were always visible; and (3) the north property owners had occupied, improved, maintained, and controlled the driveway extension without either the permission of the south property owners or any legal action against the north property owners.

¶ 7    The Schroeders submitted with their pleadings the affidavit of Francis C. Zackary, dated October 9, 2021. Zackary stated that, in 1975, he (1) owned the north property, which was then vacant; (2) submitted plans and a survey; and (3) obtained a building permit. In December 1976, having built a house and installed a driveway, he received a certificate of occupancy. To obtain the certificate of occupancy, he was not required to, and did not, submit a final " 'as built' " survey,

---

[1]We note that the year of the Schroeders's purchase is not established in the record. In their opening brief, plaintiffs presume, as they did below, that the Schroeders purchased the north property in 2008, because the record contains a plat of survey of the north property dated March 26, 2008. The Schroeders confirm in their appellees' brief that they purchased the north property in 2008. We accept this representation for purposes of our analysis.

which would have "depicted the exact location where the driveway was installed relative to the boundary lines of [the north property]."

¶ 8    Zackary stated further as follows. For approximately one year after the house was completed, the driveway had a stone base with gravel on top. In 1977 or 1978, a black asphalt driveway was laid over the existing driveway. Zackary resided on the north property until 1995. While he lived there, the location of the driveway was unchanged, and it always included the driveway extension. Zackary stated that he had reviewed (1) a plat of survey for the north property dated March 26, 2008; (2) a plat of survey for the south property dated August 29, 2018; (3) Google aerial photograph (apparently from 2021) of the north property; and (4) aerial photographs of the north property taken in 1980, 1998, 2000, 2002, and 2005. He affirmed that all these documents, copies of which were attached to his affidavit, depicted the driveway in the same location where he had installed it. The documents show the north property's driveway extending east from Hampton Court before forming a circular drive at the house's entrance and, further east, a parking area in front of the garage. The southern loop of the circular drive is shown as encroaching on the south property.

¶ 9    Zackary stated that, since the Schroeders purchased the north property, he had returned two or three times to view it, most recently two or three years ago. Each time, the driveway was still in its original location.

¶ 10    After plaintiffs replied to the Schroeders's affirmative defenses and counterclaim, plaintiffs and the Schroeders filed cross-motions for summary judgment. Plaintiffs' three-paragraph motion alleged that the driveway extension encroached on their property and that there was no lease, easement, or other express agreement by which plaintiffs allowed the Schroeders to maintain or use any part of the encroachment. The motion did not attach any affidavits or other exhibits. The

Schroeders filed an answer to the motion, noting that it did not address their adverse possession claim.

¶ 11    The Schroeders's motion attached Zackary's affidavit and its exhibits.  In their motion and response to plaintiffs' motion, the Schroeders argued that the evidence established as a matter of law that, for the statutory 20-year period or longer, the north property owners' possession of the driveway extension was (1) continuous; (2) hostile or adverse; (3) actual; (4) open, notorious, and exclusive; and (5) under a claim of title inconsistent with that of the true owner.  See *Joiner v. Janssen*, 85 Ill. 2d 74, 81 (1981); 735 ILCS 5/13-101 (West 2020).  The Schroeders noted Zackary's averments that he had resided on the north property for 17 or 18 years after installing the driveway and had visited the north property several times since, including two or three years before he completed his affidavit in October 2021.  At these subsequent visits, the driveway, including the extension, was located where he had installed it.

¶ 12    The Schroeders noted that the driveway ran from Hampton Court to the residence on the north property, so that Zackary and the succeeding owners, and no one else, used it continuously to access the property.  Further, the use and maintenance of the driveway were open and visible from the south property.  Finally, the Schroeders noted that plaintiffs had conceded that they never gave the Schroeders permission to use the driveway extension, and the Schroeders also asserted that there was no evidence that their predecessors in title had given such permission.  Thus, the Schroeders claimed title by adverse possession.

¶ 13    In response, plaintiffs argued first that the north property owners' use of the driveway extension had not been exclusive, as there were no fences or other barriers to access from the south property.  Further, they argued, the use of the driveway extension had not been open or notorious, because there was no evidence that Zackary had intentionally or knowingly encroached on

plaintiffs' property; apparently, neither he nor anyone else knew of the problem until the Schroeders purchased the north property in 2008 and received the survey revealing the encroachment. Finally, plaintiffs argued, the north property owners had received their neighbors' implicit permission to use the extension. On this point, plaintiffs relied on *Piper v. Warren*, 61 Ill. App. 2d 460, 465-66 (1965), where the plaintiffs claimed an easement in a neighbor's driveway based on past shared use, but the court rejected the claim because the plaintiffs' use "was under an implied license, a mere extension of neighborly courtesy."

¶ 14     In reply, the Schroeders contended that the evidence showed that the entire driveway, including the extension, was used exclusively by the north property owners, as its sole purpose was to enable access between Hampton Court and their home. Unlike in *Piper*, there was no shared use; Zackary built the driveway, he and his successors used it, and the neighbors had no reason to use it. Also, the driveway extension was not merely open but obvious, as were its use and maintenance for at least 20 years.

¶ 15     The Schroeders cited *Lehman v. Patel*, 2021 IL App (1st) 200543-U, ¶ 6, in which the defendants owned a house and the plaintiff owned an adjacent vacant lot, upon which the defendants' sidewalk and access stairs encroached. The trial court granted the defendants summary judgment and awarded them title by adverse possession to the encroaching property. *Id.* ¶ 19. The appellate court reversed, holding that the undisputed facts established all requirements of adverse possession except that the defendants' use be (1) hostile or adverse and (2) under a claim of title inconsistent with that of the true owner. *Id.* ¶¶ 4, 27-28. There were factual issues on these requirements because, first, the sidewalk and stairs encroached on the plaintiff's vacant lot, and "[t]he use of vacant *** land is presumed to be permissive and not adverse." *Id.* ¶ 29. Second, the plaintiff's predecessor in title had written the defendants' predecessors in title a letter

that constituted some evidence of permission. *Id.* ¶ 31. Specifically, the plaintiff's predecessor in title explained in her letter that the sidewalk and stairs encroached on her property, but she was not asking for the defendant's predecessors in title to remove them, nor was she waiving her right to request that they remove the encroachments in the future. *Id.* The Schroders argued that, because such facts were absent in the present case, *Lehman* was persuasive authority in their favor.

¶ 16 The trial court denied summary judgment for plaintiffs and granted summary judgment for the Schroeders on count I of plaintiffs' complaint and the Schroeders' counterclaim. The court noted, *inter alia*, that hostile possession requires only the assertion of ownership incompatible with that of the true owner and all others (see *Peters v. Greenmount Cemetery Ass'n*, 259 Ill. App. 3d 566, 569 (1994)). Thus, whether Zackary believed he owned the driveway extension did not matter.

¶ 17 The court made the order immediately appealable. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). On plaintiffs' motion to vacate, the court modified the judgment to describe the driveway extension with specific reference to the survey maps. Plaintiffs timely appealed.

¶ 18                             II. ANALYSIS

¶ 19 The sole issue on appeal is whether the trial court correctly held that, as a matter of law, the Schroeders achieved title to the driveway extension by adverse possession. We hold that the court was correct.

¶ 20 Summary judgment is proper when the pleadings, depositions, and other matters on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020); *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 24. Our review is *de novo*. *Pobuda*, 2014 IL 116717, ¶ 24.

¶ 21    To establish title to real property by adverse possession, a party must prove that, for 20 years (see 735 ILCS 5/13-101 (West 2020)), his possession of the property was (1) continuous; (2) hostile or adverse; (3) actual; (4) open, notorious, and exclusive; and (5) under a claim of title inconsistent with that of the true owner. *Joiner*, 85 Ill. 2d at 81; *Peters*, 259 Ill. App. 3d at 569. There is a presumption in favor of the true owner, and the claimant's proof must be strict, clear, and unequivocal. *Joiner*, 85 Ill. 2d at 81.

¶ 22    Plaintiffs contend that the Schroeders's proof fell short on three elements of adverse possession: hostility or adversity, openness, and exclusivity. We consider these elements in turn.

¶ 23    As the trial court noted, hostility "does not imply actual ill will, but only the assertion of ownership incompatible with that of the true owner and all others." *Joiner*, 85 Ill. 2d at 81. " '[T]he requirement of adverse use means that the use must be with the knowledge and acquiescence of the owner but without his permission.' " *Burrows v. Dintlemann*, 41 Ill. App. 3d 83, 86 (1976) (quoting *Ruck v. Midwest Hunting & Fishing Club*, 104 Ill. App. 2d 185, 190 (1968)).

¶ 24    Plaintiffs contend that the Schroeders did not establish as a matter of law that they and their predecessors' use of the driveway extension was hostile. Plaintiffs concede that there is no evidence that the owners of the south property ever permitted their northern neighbors to use the driveway extension. Plaintiffs assert, however, that permission was never granted because the March 26, 2008, survey was the first revelation of the encroachment; before that date, no one— not even Zackary—was aware of the trespass. Thus, plaintiffs assert, "Mr. Zackary clearly had no *intention* to trespass when he built the driveway." (Emphasis in original.) Plaintiffs conclude that, lacking the intent to encroach, Zackary lacked "an intent to claim the fee as against the true owner and all others" (see *Morris v. Humphrey*, 146 Ill. App. 3d 612, 616 (1986)), and, thus, he did not act hostilely.

¶ 25    Plaintiffs' argument flatly contradicts the current law of adverse possession.  Numerous opinions, including some plaintiffs cite, hold that actions, not intentions or subjective beliefs, determine hostility.  The requirement is "adverse *use*," not adverse intent (emphasis added) (*Burrows*, 41 Ill. App. 3d at 86) and, although *Morris* speaks of "an intent to claim the fee," that case requires only that the claimant "us[e] and control[ ] the land as an owner." *Morris*, 146 Ill. App. 3d at 616.  Indeed, *Joiner* states, "[O]ne's *actions* can adequately convey *the intent* to claim title adversely to all the world including the titleholder."  (Emphasis added.)  *Joiner*, 85 Ill. 2d at 82.  In adverse possession law, actions speak louder than words—or subjective beliefs.

¶ 26    *Joiner* removes any doubt that plaintiffs' argument flouts established authority.  In *Joiner*, the supreme court expressly rejected the suggestion that possession cannot be adverse if the claimant "knows or should know that record title is in another." *Id.* at 81.  The court also clarified that a claimant's *lack* of knowledge that another holds record title does not defeat a claim of adverse possession. *Id.* at 82-83.  The court refused to adopt the "subjective test" applied in other jurisdictions, under which "the intention of [the claimant] is the controlling factor in determining whether possession to a mistaken boundary is hostile." *Id.* at 82.  The court explained the drawbacks of the subjective test:

> "[Under the subjective test], if a landowner through mistake or ignorance takes possession to a boundary beyond the true line intending only to claim to the true line and not intending to claim the additional land if it should be ascertained that the boundary is not as he thought it, then such possession is not adverse or hostile. [Citation.] *** The difficulty with the subjective test is that it affords no protection to the landowner who innocently and mistakenly occupies and improves land beyond his boundaries.  He can never acquire title thereto.  Conversely, he who deliberately sets out to steal adjacent land

may succeed. \*\*\* 'Thus, it is held with increasing frequency that an open, notorious, and hostile possession of property for the statutory limitation period is sufficient for the acquisition of title by adverse possession, and the fact that the possession was taken under mistake or ignorance as to boundary lines is immaterial.' " *Id.* at 82-83 (quoting 3 Am. Jur. 2d *Adverse Possession* § 39, at 125-26 (1962)).

¶ 27　Whether or not the present case involves a "mistaken boundary," this passage from *Joiner* disposes of plaintiffs' argument.[2] The court's reasoning and language show that the court rejected a subjective test for the hostility element in *any* adverse possession case. Thus, neither ignorance nor knowledge of the trespass matters. Actions matter. This was Illinois case law even before *Joiner*. Plaintiffs' attempt to graft a *scienter* requirement onto adverse possession by limiting recovery to knowing trespassers defies long-standing precedent.

¶ 28　Plaintiffs make one more argument on hostility. They quote *Joiner*'s statement that "occupancy to a visible and ascertained boundary for the statutory period is deemed the controlling feature in determining hostility in mistaken-boundary cases. [Citations.]" *Id.* at 83. They contend that the edge of the driveway extension is not a visible and ascertained boundary, because the "edge of \*\*\* Zackary's asphalt is not what the [s]upreme [c]ourt had in mind in *Joiner*." Plaintiffs' unsupported speculation about what the supreme court "had in mind" in *Joiner* is no substitute for what the court actually said. As the Schroeders note, the driveway extension is delineated with

---

[2]In any event, even plaintiffs' summary of the facts implies that this is indeed a case of mistaken boundary. Plaintiffs state that, for most of the 20-year period, the owners of both properties mistakenly believed that the driveway extension was within the boundary of the north property and, indeed, considered the extension's southern edge to be part of that boundary.

specificity on the survey maps and photographs, and its boundaries are visible and ascertainable to any occupant of either property.

¶ 29    The trial court was correct that the Schroeders proved that the owners of the north property used the driveway extension adversely for the requisite period.  There was *no* evidence of permission by any owner of the south property at any time.  Indeed, plaintiffs argue that, for most of the 20-year period, the owners of the south property were unaware that the driveway extension lay on land to which the south property owners had title.  An owner ignorant of the encroachment could not have given permission to use the driveway extension.  "Possession cannot be permissive if neither the owner nor the possessor knows there is any encroachment." *McNeil v. Ketchens*, 397 Ill. App. 3d 375, 394 (2010).  In any event, by conceding in the trial court that permission was not given, plaintiffs have forfeited any argument that the use was permissive within the 20-year period. See *Kravis v. Smith v. Marine, Inc.*, 60 Ill. 2d 141, 147 (1975) (party may not seek reversal of judgment based on theory not raised in trial court).

¶ 30    There is no genuine issue of fact on the element of adversity, so we turn to plaintiffs' remaining contentions.

¶ 31    Plaintiffs contend next that the Schroeders did not establish as a matter of law that the north property owners' use of the driveway extension was open and notorious for the 20-year period. Again, they argue that, for most of that period, the owners of both properties were unaware that the north property owners' use of the driveway extension was a trespass.  Plaintiffs state, "A hypothetical stranger observing this driveway has no clue that it is improperly located."

¶ 32    Plaintiffs misunderstand the nature of open and notorious use, which need not be recognized as a trespass at the time.  " 'Such improvements or acts of dominion over the land as will indicate to persons residing in the immediate neighborhood who has the exclusive

management and control of the land are sufficient to constitute possession.' [Citations.]" *Joiner*, 85 Ill. 2d at 82 (quoting *Augustus v. Lydig*, 353 Ill. 215, 221-22 (1933)). "[T]he test for open and notorious possession is whether the community is *or could be apprised* of the claimant's possession and exclusive use and enjoyment." (Emphasis in original.) *Knauf v. Ryan*, 338 Ill. App. 3d 265, 271 (2003).

¶ 33    Here, nothing was hidden or obscure about the north property owners' regular use of the driveway—necessarily including the extension—to travel between their home and their places of work, shopping, and other activities. The driveway and Hampton Court were in plain view to all in the area. Equally visible to the neighbors and the community were the driveway's construction, improvement, and maintenance. Plaintiffs' "hypothetical stranger" (if that perspective is even pertinent) could directly observe all these acts of dominion. Plaintiffs' challenge on the openness element fails.

¶ 34    Plaintiffs contend finally that the trial court erred in holding as a matter of law that, for the 20-year period, the north property owners' use of the driveway extension was exclusive. In their appellate brief, plaintiffs cite the statement in *Davidson v. Perry*, 386 Ill. App. 3d 821, 825 (2008), that exclusivity requires that the claimant "deprive the rightful owner of all possession,' " (*Davidson*, 386 Ill. App. 3d at 821) and they assert, "Laying a ten-foot patch of asphalt on the ground does not exclude anyone." The argument goes no further.

¶ 35    We would be within our prerogative to find that plaintiffs have forfeited this argument. A court of review is entitled to have the issues clearly defined with citations to pertinent authority. We are not a depository into which the appealing party may dump the burden of argument and research. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 13. Insufficiently developed arguments are forfeited. *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991).

Quoting one general legal proposition without context and applying it in one conclusional sentence falls short of a well-developed argument. Nonetheless, we will briefly address the merits of the argument.

¶ 36 Admittedly, few Illinois opinions discuss the element of exclusivity.[3] Nonetheless, it is well established that "[e]xclusivity means the claimant's rights do not depend on the rights of others." *Peters*, 259 Ill. App. 3d at 570. Moreover, the claimant is not required to prove that he ever excluded others from the property, but only that others "never *possessed* the [property] during the adverse possession period." (Emphasis in original.) *Brandhorst v. Johnson*, 2014 IL App (4th) 130923, ¶ 57.

¶ 37 Plaintiffs' contention that the mere existence of the driveway did not prove exclusivity is insufficient to create a genuine issue of material fact. Although there was little direct evidence of exclusive use, the indirect evidence was compelling. The driveway extension was part of a driveway that ran solely between the garage attached to the home on the north property and Hampton Court. Zackary's affidavit, the survey maps, and the photographs all show that, for more than 20 years, the driveway was vital to the owners of the north property and both useless and superfluous for the owners of the south property. The latter could not access their property via the driveway unless they drove off the extension and onto their lot; it was far more efficient for them to use their own driveway, which was wholly sufficient for their needs.

---

[3]The Schroeders rely primarily on *Lehman*. The court in that unpublished decision held that the claimants proved exclusivity, but it did not explain that conclusion. See *Lehman*, 2021 IL App (1st) 200543-U, ¶ 27.

¶ 38     Therefore, it is undisputed that, for more than 20 years after the driveway was finished, the owners of the north property used the extension as their own, and the owners of the south property never possessed it, even though they might have walked across it or stumbled onto it on occasion.[4] There was no evidence before the trial court that the south property owners did even that much, and certainly no evidence that they *possessed* the driveway extension at any time within the period. Although there is little evidence of what the owners of either property did between 1995 (when Zackary sold the north property) and 2008 (when the Schroeders purchased the north property),[5]

_____

[4]Moreover, although there appears to be a dearth of Illinois case law on whether allowing others to use the claimed property defeats the exclusivity required for adverse possession, several foreign cases hold that it does not.  See *Strickland v. Markos*, 566 So. 2d 229, 235-36 (Ala. 1990) (occasional presence of titleholder on disputed driveway did not defeat claim of adverse possession); *Eberhart v. Meadow Haven, Inc.*, 960 A.2d 1083, 1087-88 (Conn. App. Ct. 2008) (installation of utility pole on disputed strip, which was also used for invited guests, did not defeat claim); *Schaffer v. Wietzel*, 132 N.E.3d 220, 228 (Ohio Ct. App. 2019) (claimants established adverse possession of driveway even though they occasionally allowed titleholders to go on it or to play volleyball and have picnics on surrounding land); *Harris v. Urell*, 135 P.3d 530, 534 (Wash. Ct. App. 2006) (titleholders' occasional entry onto disputed driveway to fell a tree or walk across the property did not defeat claim of adverse possession).  These opinions reason that the claimant's possession " 'need not be absolutely exclusive; it need be only a type of possession which would characterize an owner's use.' " *Eberhart*, 960 A.2d at 1087 (quoting *Roche v. Town of Fairfield*, 442 A.2d 911, 917 (Conn. 1982)).

[5]The aerial photographs that the Schroeders attached to their motion for summary judgment

2023 IL App (2d) 220411-U

the trial court could still conclude that the owners of the north property continued to use the driveway extension as their own (since it is extremely unlikely that they simply gave up driving to and from their home) and that the owners of the south property never possessed that which was needless and indeed useless to them. Thus, the trial court properly held that the Schroeders proved exclusivity as a matter of law.

¶ 39     In addition to the preceding arguments on the elements of adverse possession, plaintiffs also contend that the Schroeders failed to properly identify the property they claim by adverse possession. According to plaintiffs, the Schroeders "had a duty to claim and prove a distinct and identifiable boundary, and they did not." We disagree. As the Schroeders note, the boundaries of the driveway extension are clearly identifiable from the maps and photographs in the record and visible to the naked eye.

¶ 40     In their reply brief, plaintiffs argue—admittedly for the first time in the trial court or this court—that, because there was no little or no evidence as to the period between 1995 and 2008, a court cannot presume continuous possession and, therefore, cannot tack any of that time onto the Schroeders's possession time to satisfy the 20-year requirement. Whatever the merits of this argument, it comes too late. The trial court held that the Schroeders satisfied their burden for summary judgment on all elements of their adverse possession claim, and plaintiffs did not raise the tacking issue until their reply brief. Thus, they have forfeited this issue. *Jaros v. Village of*

—————————————

do depict the condition of the property, including the driveway, at several intervals during this period. The other documents reveal the following. In June 2003, Victor Volich, the owner of the north property, applied for and received a permit to place a new roof on the house. In July 2004, Volich applied for and received a permit to install a deck addition.

*Downers Grove*, 2020 IL App (2d) 180654, ¶ 39; see Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued in appellant's initial brief are forfeited and shall not be raised in reply brief). Plaintiffs contend that the issue is not forfeited, because it goes to whether the Schroeders met their burden of proof. Plaintiffs cite no authority to suggest that forfeiture does not apply in civil appeals to the issue of whether the plaintiff met the burden of proof. Forfeiture does indeed apply in those circumstances, and we apply it here.

¶ 41                                    III. CONCLUSION

¶ 42     For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 43     Affirmed.